**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

**KIMBERLY KELLEY,**

 **Plaintiff,**

v.                 Case No.  8:05-cv-707-T-TBM

**JO ANNE B. BARNHART,**
**Commissioner of the United States**
**Social Security Administration,**

 **Defendant.**
            /

**O R D E R**

  The Plaintiff seeks judicial review of the denial of her claim for Supplemental Security Income payments.  For the reasons set out herein, the decision is reversed and remanded.

I.

  Plaintiff was forty-four years of age at the time of her administrative hearing after remand.  Plaintiff has a high school education.  She stands 5', 7" tall and weighed 160 pounds.  Her past relevant work was as a food server and child monitor.  In September 1996, Plaintiff applied for Supplemental Security Income (hereinafter "SSI") payments alleging disability as of July 1996, by reason of nerve and tissue damage to the right leg and chronic pain.[1]  The Plaintiff's application was denied originally and on reconsideration.  At her request, Plaintiff

---

[1] It appears that the Plaintiff had filed an earlier application for SSI benefits in April 1993, alleging disability as of June 1990.  The application was denied initially, upon reconsideration, and after hearing before an administrative law judge.  That decision was not appealed. (R. 142-46).

received a *de novo* hearing before an Administrative Law Judge (hereinafter "ALJ") on October 22, 1997. See (R. 69-93). By decision dated March 9, 1998, Plaintiff was found capable of performing sedentary exertional work and her application was again denied. (R. 130-34). Plaintiff appealed that decision.

On September 27, 2002, the Appeals Council granted Plaintiff's request for review, vacated the March 9, 1998, decision and remanded the case to the ALJ to consider the newly submitted evidence for the period prior to January 4, 1999.[2] (R. 135-38). The hearing on remand was held January 22, 2003, to consider the closed period between July 18, 1996, and December 31, 1998.

In essence, Plaintiff claimed that she was unable to work at any job because of severe and chronic pain of her right leg and foot, swelling, and back pain. Plaintiff testified that she injured her leg in June 1990, when she was struck by a car while riding a bike. Her leg became infected and gangrenous and she endured a long, painful recovery period. By her account, the pain in her leg was chronic and sharp, like a toothache. It was worse in the winter and her leg swelled in the summer. When she is sitting, she keeps her leg elevated all the time. Between 1996 and 1998, leg pain was her main problem although her back bothered her as well. She became depressed during this period because of her leg. Her medications didn't help much with the pain, but spinal injections helped some. She has a TENS unit for her back. At the time of the hearing, she was using a cane. Plaintiff claimed her condition caused her to have difficulty sleeping. Plaintiff testified that she could stand twenty to thirty

---

[2]During the pendency of the proceedings, Plaintiff filed a third application for benefits and was found disabled on initial review with an onset date of January 4, 1999.

minutes, walk around the block, and lift twenty-five to thirty pounds on a good day. When the arthritis flares up she can barely lift a carton of milk. She could bend "a little."

She acknowledged that she had attempted to work providing child care, but she had to give it up because of her condition. Plaintiff's limited daily activities during the period in question consisted of attending to personal hygiene, helping her mother with cooking and cleaning, and sitting in the house. See Plaintiff's testimony (R. 97-114).

The ALJ also took testimony from Joyce Courtright, a vocational expert (hereinafter "VE") who initially clarified the job requirements of Plaintiff's last work as a food server at school cafeterias. Testifying upon an assumption of one having Plaintiff's age, education and work experience who could lift twenty pounds occasionally and ten pounds frequently and could stand and walk for two hours in an eight hour work day and sit for six hours in an eight work day, with limitations for only occasionally climbing ramps and stairs, balancing, stooping, kneeling, crouching, and crawling, and an inability to climb ladders, ropes, and scaffolds, use the right lower extremity, and be exposed to hazards, the witness opined that such person could not perform Plaintiff's past work, but could perform unskilled, light exertional jobs such as a telephone survey worker, small parts/bench assembler, production inspector, and information clerk.[3] Upon an additional assumption that the person would need occasionally elevate her leg, the assembly and inspections positions would be eliminated, as would the information clerk. See VE's testimony (R. 112, 114-19).

---

[3]Even though these jobs are classified as light exertional work, the VE testified that they could be performed if a person could only stand and walk for two hours out of an eight-hour day. (R. 116-17).

3

Also before the ALJ were medical records outlining the Plaintiff's medical history and the subsequent claims file. These matters are addressed herein as necessary.

By his decision of August 11, 2003, the ALJ determined that while Plaintiff has severe impairments related to traumatic deformity of her right leg, she nonetheless had the residual functional capacity to perform a restricted range of light exertional work. Upon this finding and the testimony of the VE, the ALJ concluded that Plaintiff could perform jobs available to her in the local and national economy. Upon this conclusion, the Plaintiff was determined to be not disabled. (R. 18-25). The Appeals Council denied Plaintiff's request for review, and the ALJ's decision became the final decision of the Commissioner.

II.

In order to be entitled to Supplemental Security Income payments, a claimant must be unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months. . . ." 42 U.S.C. § 423(d)(1)(A). A "physical or mental impairment," under the terms of the Act, is one that "results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." Id. at § 423(d)(3).

A determination by the Commissioner that a claimant is not disabled must be upheld if it is supported by substantial evidence and comports with applicable legal standards. See id. at § 405(g). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consol. Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)); Miles v. Chater, 84 F.3d

4

1397, 1400 (11th Cir. 1996). The Commissioner must apply the correct law and demonstrate that she has done so. While the court reviews the Commissioner's decision with deference to the factual findings, no such deference is given to the legal conclusions. Keeton v. Dep't of Health & Human Servs., 21 F.3d 1064, 1066 (11th Cir. 1994) (citing Cornelius v. Sullivan, 936 F.2d 1143, 1145 (11th Cir. 1991)).

It is, moreover, the function of the Commissioner, and not the courts, to resolve conflicts in the evidence and to assess the credibility of the witnesses. Grant v. Richardson, 445 F.2d 656 (5th Cir. 1971). Similarly, it is the responsibility of the Commissioner to draw inferences from the evidence, and those inferences are not to be overturned if they are supported by substantial evidence. Celebrezze v. O'Brient, 323 F.2d 989 (5th Cir. 1963). Therefore, in determining whether the Commissioner's decision is supported by substantial evidence, the court is not to re-weigh the evidence, but is limited to determining whether the record, as a whole, contains sufficient evidence to permit a reasonable mind to conclude that the claimant is not disabled. Miles, 84 F.3d at 1400; Bloodsworth v. Heckler, 703 F.2d 1233 (11th Cir. 1983).

The scope of review is limited to determining whether the findings of the Commissioner are supported by substantial evidence and whether the correct legal standards were applied. McRoberts v. Bowen, 841 F.2d 1077, 1080 (11th Cir. 1988); Boyd v. Heckler, 704 F.2d 1207, 1209 (11th Cir. 1983).

III.

The Plaintiff raises three claims on this appeal. As stated by the Plaintiff, they are as follows:

(1) The ALJ failed to provide good cause for rejecting the opinions of Claimant's treating physicians and the consultative physicians' opinions rendered in April, 1999;

(2) The ALJ failed to properly consider the combined effect of all of Claimant's impairments and subjective complaints including pain; and

(3) The ALJ failed in his duty to fairly and fully develop the record pursuant to the Appeals Council remand order of September 27, 2002.

By her first claim, Plaintiff essentially claims that records from treating doctors Thomas O. Schwab, M.D., and Jayam Iyer, M.D., establish that she is disabled and the ALJ improperly discounted their opinions by accepting the opinion of a medical consultant in lieu of their opinions. By her argument, the opinions of her treating physicians indicated she was without the functional capacity to perform even sedentary work. Plaintiff also complains that the ALJ should have given retroactive effect to the April 1999 opinions of H. D. Wassel, M.D., and Jim Takach, M.D., finding her incapable of even sedentary work on her subsequent application. In a related argument raised in her third claim, Plaintiff complains that the ALJ failed to employ the services of a medical expert or re-contact her doctors as directed by the Appeals Council in its remand order. Since the onset date of disability was at issue on the rehearing, Plaintiff urges that the ALJ was obliged to obtain the services of a medical expert or re-contact her treating doctors for additional testimony in this regard.

In response, the Commissioner argues that the ALJ properly considered and adequately discounted Dr. Schwab's opinions by noting that the doctor's 1995 opinions predated Plaintiff's own alleged onset date and his treatment notes indicated that he kept Plaintiff off work at her request so that she could attend school rather than because of a medical condition. The Commissioner also argues that the ALJ's finding that Dr. Schwab made no particular

6

findings regarding functional limitations was also a significant reason to discount his general statement that Plaintiff should be getting benefits.  To this end, the Commissioner argues further that the decision on disability is left to the ALJ and opinions offered by medical sources on the matter of disability are not binding.  Regarding Dr. Iyer, the Commissioner maintains that the ALJ's conclusion regarding his opinion that Plaintiff met the former listing at 1.09 is, in fact, correct.  As for the refusal of the ALJ to credit Dr. Wassel's April 1999 opinions, the Commissioner notes that his report post-dates the period under consideration and does not purport to relate back in time to the closed period.  In such circumstances the ALJ was not required to give the statement retroactive effect.  Lastly, the Commissioner urges that the ALJ was not obliged to contact a medical expert or to re-contact Plaintiff's treating sources because she has not demonstrated that additional evidence from such sources was necessary to make an informed decision.

An overview of the pertinent portions of the medical record proves useful.  The record reveals that Dr. Schwab, an orthopedist, (as well as one his associates, Dr. Craig Schwartz), treated Plaintiff from the time of her injury in 1990 through July 1997.  Dr. Schwab reported that Plaintiff was to be off work for: (1) three months as of July 1995 (R. 248); (2) three months as of September 1995 (R. 247); (3) six months as of January 1996 (R. 245); and (4) approximately three and a half months of January 1997 (R. 262).[4]  On two of those occasions, namely, January 1996 and 1997, the doctor noted that the Plaintiff had requested notes to be off work those times so that she could complete classes for childcare licensing. Dr. Schwab also completed a treating source statement regarding Plaintiff's physical capacity

---

[4]Similar notations were made by Dr. Schwab during earlier periods but I do not find them particularly relevant to the closed period of time at issue.

in May 1995.  On that form, the doctor indicated that Plaintiff's ability to lift, carry, and sit was not affected, but she could not stand or walk at all in an eight-hour workday; she could never climb, balance, stoop, crouch, kneel, or crawl; and had to avoid heights.  (R. 307-08).  Then, in July 1997, Dr. Schwab stated in a letter to Plaintiff's legal representative, "I feel that the patient would be severely limited as far as her activities using her (R) lower extremity because of her ongoing problems.  I feel that she should be receiving social security benefits because of her injury."  (R. 299).  He also indicated that Plaintiff has had chronic pain since 1990 despite many types of conservative treatment.  Id.

As for Dr. Iyer, a specialist in pain management, she treated the Plaintiff from October 1993 through July 1995.  In response to an inquiry by Plaintiff's attorney in April 1995, Dr. Iyer indicated that she did not perform disability ratings, but it was her opinion that the injuries that Plaintiff sustained in 1990 "continue to compromise [her] ability to function efficiently and effectively in her daily existence . . . she will require ongoing treatment for her pain condition and will necessarily be unable to maintain a physically normal lifestyle."  (R. 283).  She concluded by stating that, in her opinion, Plaintiff's "employment prospects will be severely limited by her physical condition."  Id.  Then, in interrogatory responses dated July 2005, Dr. Iyer reported that Plaintiff's prognosis was poor, Plaintiff's condition met listing 1.09 (anatomical deformity), and Plaintiff had difficulty in walking or standing for any length of time.  (R. 297-98).

E. Dale Brandt, D.O., Plaintiff's treating general practitioner at a local clinic from 1995 through late 2002, opined on three occasions in mid-1997 that Plaintiff was capable of "light duty employment only."  (R. 577-78, 580)  During the same period of time, Dr. Brandt documented Plaintiff's complaints of back pain with stress and spasms.  (R. 559, 562-64,

566). In February 1999, Dr. Brandt opined that Plaintiff "probably should have some disability." (R. 560).

In December 1996, a state agency doctor reviewed Plaintiff's medical records. It was this doctor's opinion that Plaintiff retained the physical capacity to occasionally lift twenty pounds, frequently lift ten pounds, stand and/or walk at least two hours in an eight-hour day, sit for a total of about six hours in an eight-hour day, occasionally perform postural activities, never push or pull with the lower right leg, had to avoid concentrated exposures to hazards, and required a sit/stand option. (R. 225-32).

Dr. Wassel, an orthopedist, examined Plaintiff in April 1999 upon request of the Office of Disability Determinations. He noted that Plaintiff had virtually no soft tissue between the knee and ankle, difficulty walking, constant leg pain, and ongoing back pain with difficulty sitting and standing as a result of her abnormal gait. (R. 605). He further noted difficulty standing and walking due to the contracture in the knee and ankle. Id. at 606. On examination of Plaintiff's right knee, the doctor noted a flexion contracture of 15 degrees, atrophy of the right quadriceps, complete total deformity to the right leg ("all of the soft tissue including the skin and muscle being virtually ripped from the bone completely denuding the bone," and "skin coverage is with split thickness skin graft" that is extremely thin), great sensitivity to palpation of the area under the skin graft, and absent right knee jerk. Id. at 606-07. Plaintiff was not able to completely put her right foot flat on the floor. Dr. Wassel noted some straightening and spasm of the paraspinal muscles of the lumbar spine. Id. at 607. He also reported that although Plaintiff did not require an assistive device to walk, her gait was "greatly abnormal" and she was not fully weight-bearing on the right lower leg. Id. at 608. Dr. Wassel opined that Plaintiff did not have the ability for prolonged standing or walking,

9

during an eight-hour day she could walk maximum one to two hours, stand for one hour, and had to be "extremely" careful not to sustain even the slightest scratch as it would be a "total disaster." Id. at 609. After reviewing Dr. Wassel's report, Dr. Takach, a non-examining, state agency doctor, opined that Plaintiff had the residual functional capacity to perform less than sedentary work.[5] (R. 597-604).

Thus, the ALJ rejected the opinions of Dr. Schwab and Dr. Iyer to the extent that they indicated or suggested disability.[6] As for Dr. Schwab, the ALJ discounted the doctor's "off work" notations, explaining that three of them predated the closed period in question, the opinions failed to provide specific limitations, and two of the "off work" notes appear to have been issued at Plaintiff's request. (R. 22). The ALJ agreed with Dr. Schwab that Plaintiff's ability to use her right leg was severely limited, but again noted that the doctor did not specify the nature of the limitations. The ALJ discounted Dr. Schwab's opinion that Plaintiff should receive benefits, explaining that it was not a medical opinion and was therefore not entitled to special consideration. Id. The ALJ did not address Dr. Schwab's May 1995 treating source statement. Regarding Dr. Iyer, the ALJ discounted her opinion that Plaintiff's condition met that of a listed impairment because the listing relied upon no longer existed, and even if it did, the ALJ found that the criteria for it was not met as it required anatomical deformity in both hands, both feet, or one hand and one foot. (R. 21). The ALJ agreed with the previous ALJ's finding (in 1998) that Dr. Iyer's opinion that Plaintiff's condition severely limited her employment was contradicted by the doctor's findings that Plaintiff obtained good results with

---

[5]In light of these two opinions, Plaintiff was found disabled as of January 1999.

[6]The ALJ did not discount these doctors' diagnoses or medical findings.

treatment. Id. The ALJ did not mention Dr. Iyer's statement that Plaintiff would have difficulty walking or standing for any length of time. As for Dr. Wassel, the ALJ acknowledged the subsequent grant of benefits based on his opinion and Dr. Takach's opinion, but the ALJ determined that it had "no more retroactive effect than to support the grant of benefits from January 1, 1999." (R. 22). Given that the closed period at issue was July 18, 1996, through December 31, 1998, the ALJ adopted a non-examining doctor's opinion dated December 8, 1996. Id. Thus, the ALJ determined that during the period in question, Plaintiff retained the physical capacity to occasionally lift twenty pounds, frequently lift ten pounds, stand and/or walk at least two hours in an eight-hour day, sit for a total of about six hours in an eight-hour day, occasionally perform postural activities, never push or pull with the lower right leg, had to avoid concentrated exposures to hazards, and required a sit/stand option.[7] Id. at 21.

Upon careful and thorough consideration, I conclude that the evidence before the ALJ was inadequate for him to determine whether Dr. Wassel's opinion related back to the closed period at issue and a remand is required. Here, the onset date of disability was placed squarely before the ALJ by the Plaintiff as well as the Appeals Council. While the Appeals Council did not order the ALJ to re-contact Dr. Wassel, a fair reading of its opinion reflects that some inquiry by the ALJ into whether Plaintiff's disability began prior to January 1999 in light of this doctor's opinion was warranted. The ALJ failed to do so. Rather, without explanation the ALJ summarily concluded that Dr. Wassel's opinion did not relate back to the closed period. The decision of the Appeals Council also fairly suggests that the evidence

---

[7]The ALJ found that this opinion was bolstered by Dr. Brandt's June 1997 opinion that the Plaintiff was capable of "light duty employment only." (R. 22).

relied upon by the state agency in the subsequent finding of disability might relate back to the period under consideration by the ALJ. See (R. 137). In light of these findings by the Appeals Council, the ALJ was obligated to inquire into this matter more than he did. And, on the instant record, it appears that the only reasonable inquiry would have been to re-contact Dr. Wassel. To the extent that the ALJ found that Dr. Wassel's opinion did not relate back to the closed period because the doctor's report did not state that Plaintiff's condition predated his findings, that rationale is not supported by the record. Dr. Wassel examined Plaintiff in April 1999, and on review of Plaintiff's subsequent claim for disability, the Social Security Administration determined that the doctor's opinion related back at least to January 1999, presumably the date of Plaintiff's application. Thus, it is undisputed that Plaintiff's condition worsened at some point between the non-examining doctor's December 1996 opinion and the onset of disability in January. Further, the record supports Plaintiff's claim of back pain during this period, as does Dr. Wassel's notation that Plaintiff had developed additional problems with her back likely caused by her abnormal gait.

In sum, without re-contacting Dr. Wassel, there was insufficient evidence for the ALJ to determine that the doctor's opinion had no retroactive effect prior to January 1999. Consequently, despite the protracted history of this case, I find that a remand for further development is required. See 20 C.F.R. § 416.912(e) (providing that a medical source will be re-contacted if the evidence he submits contains an ambiguity that must be resolved or is inadequate for determining whether the claimant is disabled); cf. Holladay v. Bowen, 848 F.2d 1206, 1209 (11th Cir. 1988) (providing that ALJ must order a consultative examination when such is necessary for him to make an informed decision). On remand, the ALJ shall re-contact Dr. Wassel to determine the retroactive effect of his opinion, if any.

IV.

For the foregoing reasons, the decision of the Commissioner of the United States Social Security Administration is not supported by substantial evidence or is not in accordance with the correct legal standards.  The decision is reversed and remanded for further proceedings before the Commissioner consistent with this Order.  Accordingly, the Clerk is directed to enter Judgment in favor of the Plaintiff and to close the file, and the matter of fees and costs shall be addressed upon further pleadings.

**Done and Ordered** at Tampa, Florida, this 27th day of September 2006.

THOMAS B. McCOUN III
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:
Counsel of record